**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
In re:                                    :
                                          :     CHAPTER 7
PARK AVENUE BAR & GRILL, LLC,             :
                                          :     CASE NO.:    14-16736 (SLM)
                    Debtor.               :
_____           :
                                          :
KARL HALLIGAN                             :
                                          :
                                          :     ADV. PRO. NO.:    15-2192
                    Plaintiff,            :
v.                                        :
                                          :
JOHN O'CONNOR, HARRY                      :
HODKINSON, and H&H REAL ESTATE            :
INVESTMENTS LLC,                          :
                                          :
                    Defendants.           :
_____           :

**LETTER OPINION**

**A P P E A R A N C E S :**

Brian Baker, Esq.
Ravin Greenberg Friedman, LLC
101 Eisenhower Parkway
Roseland, New Jersey 07068
Attorneys for Plaintiff, Karl Halligan

Andrew R. Turner, Esq.
Turner Law Firm LLC
79 South Orange Avenue
P.O. Box 526
South Orange, New Jersey 07079
Attorneys for Defendants, John O'Connor and Harry Hodkinson

1

Gwyneth K. Murray-Nolan, Esq.
Braff, Harris, Sukoneck & Maloof
570 W. Mt. Pleasant Avenue
P.O. Box 657
Livingston, New Jersey 07039
Attorneys for Defendant, H&H Real Estate Investments, LLC

John J. Harmon, Esq.
Rabinowitz, Lubetkin & Tully, L.L.C.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Attorneys for Jay L. Lubetkin, Chapter 7 Trustee for the Debtor, Park Avenue Bar & Grill, LLC

Dear Counsel:

Before the Court is a *Motion for the Entry of an Order Remanding Case* ("Motion to Remand"), filed by Karl Halligan ("Halligan") by and through his counsel, Ravin Greenberg Friedman, LLC, in response to the *Notice of Removal* filed by John O'Connor ("O'Connor") and Harry Hodkinson ("Hodkinson" and collectively "Individual Defendants"), by and through their counsel, Turner Law Firm LLC, to remove a matter from the Superior Court of New Jersey to the Bankruptcy Court.   The Individual Defendants filed a letter opposition to the Motion to Remand. Defendant H&H Real Estate Investments, LLC ("H&H"), through counsel, Braff, Harris, Sukoneck & Maloof, filed Support for the Notice of Removal and objected the Motion to Remand at the hearing.   Jay L. Lubetkin ("Trustee"), Chapter 7 Trustee for the Debtor, Park Avenue Bar & Grill ("Debtor"), a non-party to the removed action, filed Opposition to the Motion to Remand. For the reasons that follow, the Court grants Halligan's Motion to Remand.

**FACTS**

On April 4, 2014 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").   The case converted to

Chapter 7 on December 9, 2014.

The Debtor is an operating company for a bar and grill located at 3417 Park Avenue, Union City, New Jersey.   H&H is the holding company that owns the real property where the Debtor operated.   Halligan and the Individual Defendants were founding members of the Debtor and H&H.

## State Court Proceedings and Intervening Bankruptcy

Nearly two years prior to the Petition Date, on April 9, 2012, Halligan filed a Complaint against the Individual Defendants in the Superior Court of New Jersey, Chancery Division, Hudson County, originally entitled *Karl Halligan v. John O'Connor and Harry Hodkinson* ("Original Complaint") and identified by Docket No. HUD-C-55-12 ("State Court Action").   The State Court Action has its own tortured history and is now captioned *Karl Halligan v. John O'Connor, Harry Hodkinson and H&H Real Estate Investments LLC.*   At no time was the Debtor named a party to the State Court Action.   The State Court Judge is the Honorable Hector R. Velazquez.

The State Court Action can best be understood in two stages.   The first stage is comprised of the filing of the Original Complaint (naming only the Individual Defendants), followed by trial, Judgment and an Order Vacating Judgment ("Stage One").   This bankruptcy case was filed during Stage One.   The second stage starts after the Judgment was vacated and is comprised of the First Amended Complaint (naming only H&H as a defendant) and the Revised First Amended Complaint (naming the Individual Defendants and H&H as defendants) ("Stage Two").

## Stage One

The Original Complaint sought Judgment (1) determining (a) the fair market value of each

3

member's interest in H&H and the Debtor, (b) the present value of Halligan's H&H Compensation and Park Avenue Salary, and (c) the Individual Defendant's pro rata obligation to reimburse Halligan for tax payments made for H&H and the Debtor; (2) ordering the Individual Defendants to pay Halligan the present value of the aforementioned items; (3) allowing (a) Halligan to purchase the Individual Defendant's member interests, or (b) the Individuals Defendant's to purchase Halligan's member interest; and (4) for such other relief as may be fair and just.

After a full trial that spanned several days, the State Court issued an Opinion dated November 14, 2013, and on January 17, 2014 entered judgment, as modified on March 18, 2014, ("Judgment") in favor of Halligan and against the Debtor and H&H jointly and severally in the amount of $793,772.50.   Judgment was entered against the Debtor and H&H despite the fact that they were not parties to the State Court Action.[1]   The Judgment was comprised of (1) equity compensation in the amount of $462,372.50; (2) manager's salary of $415,000.00; (3) tax reimbursement of $129,000.00; and (4) less monies received as draws in the amount of $212,690.00.   The Judgment also provided that: (a) Halligan could docket the Judgment on April 7, 2014; (b) Halligan could immediately file a *lis pendens* against the property owned by H&H; (c) H&H was obligated to pay Halligan equity compensation of $35,000 net of taxes on a monthly basis until the dissolution or sale of the business; and (d) on March 21, 2014, following his dissociation, Halligan would have no further obligation under the operating agreements for contributions (capital or otherwise) and no responsibility for any debt, obligation or other liability other than that which he may have incurred before his dissociation.

On March 21, 2014, Halligan turned over control of H&H and the Debtor to the Individual Defendants, O'Connor and Hodkinson.   Once the Individual Defendants had control of the Debtor

---

[1] Judge Velazquez, in later proceedings discussed *infra*, recognized his error and sought to correct it.

as the remaining members, they caused the filing of this Chapter 11 bankruptcy case on April 4, 2014.

The Debtor did not file a complete petition on the Petition Date, but filed the *List of Creditors Holding 20 Largest Unsecured Claims*, on which the Debtor scheduled Halligan with a "contingent, unliquidated, disputed" unsecured claim in the amount of $873,000.00.   The Debtor identified the claim as "contingent, unliquidated, disputed," even though there was no appeal or other challenge to the Judgment as of the Petition Date.

Halligan, through counsel, filed a non-priority, general unsecured claim in the amount of $793,772.50 ("Claim No. 8-1") on account of the March 18, 2014 Judgment.

On November 10, 2014, the Debtor filed a *Motion to Approve Post-Petition Financing*, which Halligan objected to by filing an *Objection and Cross Motion for the Entry of an Order (1) Converting the Debtor's Chapter 11 Case to a Chapter 7 Case; and (2) Quashing or Limiting Scope of 2004 Subpoena* ("Cross-Motion to Convert").

On November 19, 2014, the Individual Defendants filed a *Motion to Vacate the State Court Judgment* ("Motion to Vacate")[2] in the State Court.

On December 3, 2014, back in Bankruptcy Court, Halligan filed a *Letter* in further support of the Cross-Motion, which included a challenge to the Individual Defendants' actions in filing the Motion to Vacate in State Court as a violation of the automatic stay since the relief they were seeking impacted the Debtor.

The Honorable Donald H. Steckroth granted the Cross Motion to Convert and on

---

[2] The parties failed to provide this document to the Court, but, based upon the record, the Court understands that the Individual Defendants filed the Motion to Vacate on the basis that (1) Judge Velazquez entered the Judgment against non-parties; and (2) the accounting firm of Bederson LLP, following its retention in the bankruptcy case, prepared a Report ("Bederson Report") reflecting payments made by the Debtor to or for the benefit of Halligan beyond what was accounted for during the State Court Action.

December 9, 2014, the Court entered an Order converting the case to a Chapter 7. On the same

day, Jay L. Lubetkin was appointed the Chapter 7 Trustee ("Trustee").

On December 15, 2014, this Court entered an *Order Staying State Court Proceedings*

("December 2014 Bankruptcy Order Staying State Court Proceedings"), which Ordered that

various matters pending before the State Court were stayed pending further order from the

Bankruptcy Court, including:

> Halligan v. O'Connor and Hodkinson, Docket No. C-55-12 ("Original
> Lawsuit"), including, but not limited to any motion to vacate the
> Judgment, motion to hold the defendants in contempt and the
> defendants appeal of the underlying contempt order pending in the
> Appellate Division (Case No. A-1167-14T3).

On January 13, 2015, Halligan filed a *Motion for Relief from Order Dated December 15,*

*2014*. Shortly thereafter the Individual Defendants filed a *Response* and the Trustee filed a

separate *Response*.

On January 23, 2015, Judge Steckroth entered an *Order Granting Relief from Court Order*

*Dated December 15, 2014* ("January 2015 Bankruptcy Order Granting Relief from Stay"), which

Ordered that

> this Court's order dated December 15, 2014, is hereby modified and the
> automatic stay, to the extent applicable, is hereby lifted to permit the [State
> Court] to reinstate and fully consider and decide any action by and between
> Halligan, H&H and the members of H&H, including but not limited to the
> following:
> 1) Halligan v. O'Connor and Hodkinson, Docket No. C-55-12 (the
>    "Original Action"), wherein a Judgment was entered against the Debtor,
>    and wherein there is pending (i) a motion to vacate the Judgment against
>    H&H and the Debtor, (ii) a motion to hold O'Connor and Hodkinson in
>    Contempt for certain failures to respond to Halligan's collection efforts
>    on the Judgment against H&H only, and (iii) O'Connor and
>    Hodkinson's appeal of the underlying contempt order pending in the
>    Appellate Division (Case No. A-1167-14T3).

. . .

> ;and it is further
> ORDERED, that Halligan is authorized to foreclose upon his Judgment up
> to the point of scheduling a Sheriff's sale of the Property owned by H&H,
> but shall be stayed from proceeding with a sheriff's sale until further order
> of this Court; and it is further
> ORDERED that nothing contained herein shall be construed to vacate the
> Stay Order, or the Automatic Stay, to the extent applicable to O'Connor's
> and Hodkinson's motion to vacate the Judgment on behalf of Park Avenue;
> and it is further
> ORDERED that nothing contained herein shall limit or restrict in any way
> the rights of the respective Parties to request any further relief from this
> Court to lift the automatic stay or vacate the Stay Order to continue the
> Original Lawsuit as it pertains to the Debtor.

With relief from the automatic stay, the parties returned to State Court to prosecute the

Motion to Vacate.   On or about March 20, 2015, Judge Velazquez vacated the Judgment because

neither the Debtor nor H&H were actually named as defendants.   In his oral decision, Judge

Velazquez stated, among other things:

> I indicated in chambers that although, frankly, I was upset at the way that I
> resolved this case and not recognizing that these LLCs were not – not
> named in the complaint, but my concern as well was why counsel – and
> when I say "counsel," I mean both of you.   Why – why did not either one of
> you come to the Court and – and make that application either by way of a
> motion to vacate the judgment or simply to correct the decision of the
> Court? Now you indicated in chambers that you were aware immediately
> that – that this judgment was – was in error.   Now the fact that you didn't
> notice me, the fact that you didn't move earlier, should that have an impact
> on my decision whether to – to void this judgment?
> . . .
> My question directly is – to you [Mr. Turner] is why.   Why didn't you
> come to me immediately after reading my – my decision and say, Judge,
> you got it wrong?
> . . .
> You should have some kind of explanation as to why you waited 10 months,
> 11 months to make that motion.
> . . .
> Well, I – but, Mr. Turner, you know – you knew in November.   When we
> mailed or filed this – this decision, you knew that the judge entered an order

> against the LLCs, notwithstanding the fact that they were not parities and
> you did nothing about it.

Transcript dated March 20, 2015, at pages 12-14, attached to Motion for Remand as Exhibit A.

And later:

> Again, this was a mistake I made.   I think I have the obligation to correct it.
> However, because obviously this Court made many factual determinations
> that would – would not change – would probably not change if this matter
> was – was retired or if the LLCs were joined in a separate action, I think the
> most appropriate remedy to correct the mistake made by the Court is to
> vacate the judgment as to the monetary damages against the LLCs, the
> Court will grant the plaintiff the right to amend the complaint to include the
> LLCs as party defendants and to allege any causes of actions that were not
> previously set forth in the original complaint.   So I'm going to allow the –
> the plaintiff to amend the complaint within 20 days, to serve that complaint
> against the LLCs.
>
> And then the only issue that this Court will address would be the damage
> issues because that's the only portion of my judgment that this Court will
> set aside.   So I will grant a retrial on the issue of damages only as to the
> LLCs.

*Id.* at page 20.

Following the oral decision, the State Court entered an *Order Vacating Judgment and
Revised Modification of Judgment*, dated April 6, 2015, ("Order Vacating Judgment").   The Order
Vacating Judgment contains the following relevant ordered paragraphs:

> 2. The Court **vacates that part** of the Judgment and Modification of
> Judgment which awarded a money judgment to Plaintiff and against the
> LLCs;
>
> 3.   **In all other respects, the findings of fact and the conclusions of law
> recited in the Court's November 14, 2013 Opinion, and memorialized
> in the Judgment and Modification of Judgment, remain undisturbed.**

(Emphasis supplied). Entry of the Order Vacating Judgment concluded Stage One of the State
Court Action.

**Stage Two**

On June 1, 2015, Halligan filed the *First Amended Complaint* ("June Amended Complaint"), naming only H&H as a defendant, thus beginning Stage Two of the State Court Action.   On June 9, 2015, Halligan attempted to serve the June Amended Complaint on H&H. The June Amended Complaint contained four counts: (1) breach of contract, "Pursuant to the Agreement, H&H owes Plaintiff Equity Compensation from the date of formation to the date of trial"; (2) quasi contract, "H&H received the benefit of the Plaintiff's payment of real estate taxes . . . [i]t would be unjust for H&H to retain the benefit . . . ."; (3) quasi contract, "Plaintiff devoted his full time and energies to managing Park Avenue and H&H from their opening until the date of his dissociation . . . [i]t would be unjust for H&H to retain the benefit . . . ."; and (4) valuation of Plaintiff's interest in H&H, "[p]ursuant to N.J.S.A. 42:2B-38, Plaintiff is entitled to receive the fair market value of his interest in H&H."

From what this Court gleams from the record provided, and the representations made by counsel during the hearing, the Individual Defendants insisted that they remain as named defendants in Stage Two of the State Court Action because the New Jersey Court Rules do not permit a party to unilaterally remove named parties without seeking relief from the Court.   The parties represented to this Court that Judge Velazquez agreed and directed Halligan to file a revised amended complaint.   Judge Velazquez did not strike, vacate, or otherwise declare the June Amended Complaint void.

Following Judge Velazquez's directive, on August 25, 2015, Halligan filed a *Revised First Amended Complaint* ("August Revised Amended Complaint"), which named H&H, O'Connor and Hodkinson as defendants.   The Counts in the August Revised Amended Complaint are

identical to those in the June Amended Complaint.

Motion practice continued in the State Court Action during Stage Two, however, the Court does not have a complete record of those proceedings because they were not included with the Notice of Removal, and the information has been provided in a piecemeal fashion based upon the picture the parties wish to convey since the Notice of Removal was filed.

## Removal to Bankruptcy Court

Nearly a year and half after the Petition Date, eight months after Judge Steckroth granted stay relief, nearly six months after the State Court entered the Order Vacating Judgment, nearly four months after Halligan filed the June Amended Complaint and exactly thirty days after Halligan filed the August Revised Amended Complaint, the Individual Defendants filed a *Notice of Removal* to the Bankruptcy Court.

The Notice of Removal, filed on September 24, 2015, states, among other things:

> Although Plaintiff did not name the Debtor as a party to the State Court Action, the substance of the pleading expressly states he is seeking compensation for services allegedly rendered for the benefit of the Debtor.
>
> . . .
>
> The State Court lacks jurisdiction to adjudicate the claims or interests of the Debtor which rests exclusively with the Bankruptcy Court.
>
> . . .
>
> To the extent Plaintiff seeks compensation or renumeration for services allegedly rendered or monies loaned to the Debtor, the removed proceedings are core proceedings arising under Title 11 of the United States Code or, alternatively, are non-core proceedings which are directly related to the bankruptcy case.

The only documents attached to the Notice of Removal are (1) the August Revised Amended Complaint; (2) the December 15, 2014 Bankruptcy Order Staying State Court Proceedings; and (3) the January 23, 2015 Bankruptcy Order Granting Relief from Stay.

On September 29, 2015, Halligan filed a *Motion for Entry of an Order Remanding Case*

("Motion to Remand") and asked the Court to hear the matter on shortened time.   In the Motion to

Remand, Halligan alleges that the Individual Defendants filed the Notice of Removal "as part of a

scheme and litigation tactic to delay the proceeding with the hope that either the State Court Judge

considering this matter retires or to forum shop the proceeding for a different Judge or court to

consider the matter."   In its simplest terms, the focus of the Motion to Remand is that the August

Revised Amended Complaint "seeks absolutely nothing from the Debtor", "contains four simple

state law contract claims against H&H", and "raises no question of federal law, no provision of

title 11 is invoked and no relief is sought against the Debtor."

Because of the request for a hearing on shortened time, the Court held a status conference

on October 6, 2015, at which time it set a briefing schedule.

On October 15, 2015, H&H filed a *Certification in Support of Defendants' Motion for*

*Removal and in Opposition to Plaintiff Halligan's Motion for Remand* ("**Certification in Support**

**of Removal**").   In the Certification in Support of Removal, H&H asserts that "the State Court

does not have the jurisdiction to hear claims of the plaintiff as to services allegedly rendered to the

Debtor." H&H's Certification in Support further asserts that this Court has jurisdiction over the

removal proceedings under 28 U.S.C. 1452(a) because the "plaintiff's claims against H&H and the

Debtor are intertwined to the degree that the removal proceedings are core proceedings arising

under Title 11 of the United States Code or, in the alternative, are non-core proceedings which are

directly related to the bankruptcy case."

On October 20, 2015, O'Connor and Hodkinson filed a *Letter Brief* in opposition to the

Motion to Remand.   The argument against remand focuses on two points: (1) Halligan filed a

proof of claim in the Debtor's bankruptcy that seeks compensation for services rendered, the same

relief Halligan is seeking in the State Court Action; and (2) in light of the Bederson Report, the Debtor's estate may have counterclaims against Halligan.

On October 22, 2015, Halligan filed a *Response* to Defendants O'Connor and Hodkinson's Opposition to the Motion to Remand. In the Response, Halligan asserts that the Defendants O'Connor and Hodkinson did not explain in their Opposition "how or in what conceivable way" Halligan is seeking anything from Park Avenue or how the judgment against H&H impacts Park Avenue or the administration of its case. Halligan further asserts that Defendants' O'Connor and Hodkinson Opposition is "blatant forum shopping" and "is an abuse of the bankruptcy process designed solely to shop the case to any other court, to any other judge, having previously lost before."

On October 23, 2015, the Trustee filed *Opposition* to the Motion to Remand.  The Trustee's Opposition also focuses on Halligan's claim against the Debtor and the Bederson Report, stating: "[i]f Halligan is successful in the Removed Action, there will be significant issues as to whether Halligan's claim in the bankruptcy case should be reduced to prevent a double recovery" and "the Trustee expects to file an adversary proceeding complaint against Halligan within the next few days asserting a variety of claims against Halligan based on his conduct during this tenure as the Debtor's managing member for many years . . . ."

On October 26, 2015, Halligan filed an amended claim ("Claim No. 8-2"), which no longer references the Judgment and instead asserts a non-priority general unsecured claim in the amount of $702,124.80 for (i) unpaid salary for 8 years, 9 months and 11 days at $100,000 per annum plus $100,000 in sales taxes paid, less receipt of $212,000; and (ii) the value of Halligan's equity interest in the Debtor.

On the same day, Halligan also filed a *Response* to the Trustee's Opposition. In this Response, Halligan claims that the Trustee's first argument, that the outcome of Halligan's claims against H&H might have an impact on the proof of claim he filed, is "legally moot" in light of the amended claim. Halligan further asserts in the Response that the Trustee's second argument is "legally and factually flawed by the Trustee's own admission the claims against Halligan are limited to claims related to the Debtor alone."

On October 28, 2015, the Trustee filed a *Complaint to Avoid and Recover Pre-Petition Transfers and for Other Related Relief* against Halligan, with causes of action under Sections 544, 547, 548, 550 and 502.

On October 29, 2015, the Court held a hearing on the Motion for Remand.   At the very end of the hearing, counsel for the Individual Defendants queried whether the Court had a copy of the Order Vacating Judgment entered by Judge Velazquez on April 6, 2015.   The Court did not have the Order Vacating Judgment, because neither party supplied it, and directed counsel to docket a copy of same.   The Court reserved decision.

On October 30, 2015, counsel for Halligan docketed a copy of the Order Vacating Judgment.   This was the first time this Order was provided to this Court.   The contents of the Order Vacating Judgment, quoted above, are relevant to the Court's analysis of the Motion for Remand.   Based on contents of the Order Vacating Judgment, Halligan filed yet another amendment to his proof of claim (Claim No. 8-3), which now asserts a non-priority general unsecured claim in the amount of $308,000.00 for (i) unpaid salary of $60,000 annually from April 2007 through March 2014, less receipt of $212,000; (ii) for reimbursement of $100,000 in sales tax personally paid by Halligan; and (iii) the unknown value of Halligan's equity interest in the

13

Debtor.

On the same day, counsel for the Individual Defendants filed an unsolicited, post-argument

letter attaching a September 11, 2015 Order from the State Court, which set a time frame for H&H

to answer the August Revised Amended Complaint.    It appears the Individual Defendants

provided this Order in support of the two-fold argument that (1) the August Revised Amended

Complaint is the operative document for purposes of the timeliness of removal and (2) since H&H

was not required to answer until October 11, 2015, H&H was not a "live" party and could not file

a Notice of Removal.    As discussed below, the Court finds this line of argument unconvincing.

**DISCUSSION**

### I. Removal Was Untimely

Before reaching the substantive arguments in the Motion to Remand, the Court's starting

point for analysis is whether the Individual Defendants removed in accordance with the Federal

Rule of Bankruptcy Procedure.    Fed. R. Bankr. P. 9027(a)(1) for removal provides:

> Where Filed; Form and Content.    A notice of removal shall be filed with
> the clerk for the district and division within which is located the state or
> federal court where the civil action is pending.    The notice shall be signed
> pursuant to Rule 9011 and contain a short and plain statement of the facts
> which entitle the party filing the notice to remove, contain a statement that
> upon removal of the claim or cause of action the proceeding is core or
> non-core and, if non-core, that the party filing the notice does or does not
> consent to entry of final orders or judgment by the bankruptcy judge, and be
> accompanied by a copy of all process and pleadings.

The Individual Defendants failed to provide this Court with "a copy of all process and pleadings"

as required by the Rule.    During the October 6, 2015 status conference, counsel for the Individual

Defendants admitted as much stating "all that was in the State Court on the Revised Application or

Amended - is the Amended Complaint.    Um, I will, uh, yield the point that I could have, um,

added that first case management or the order that permitted the filing, I'm not sure that we included that. But that's it. H&H had not yet filed an answer and/or counterclaim. And John O'Connor and Harry Hodkinson had not filed their responsive pleading." Counsel for H&H limited this Court's review of the record by providing the Court with only one State Court document, the August Revised Amended Complaint.[3]

The Rule also provides two different frameworks for filing a Notice of Removal depending on whether the civil action was initiated before or after commencement of a bankruptcy case. *See* Fed. R. Bankr. P. 9027(a)(2) and (3).

Rule 9027(a)(2) addresses civil actions initiated before commencement of a bankruptcy case and provides that the time for filing a Notice of Removal is the longest of (A) 90 days after the Petition Date, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action was stayed under Section 362, or (C) – relevant to a chapter 11 reorganization. Fed. R. Bankr. P. 9027(a)(2).

Rule 9027(a)(3) addresses civil actions initiated after commencement of a bankruptcy case and provides that the time for filing a Notice of Removal is the shorter of (A) "30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed", or (B) "30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons." Fed. R. Bankr. P. 9027(a)(3).

Despite the fact that Halligan initiated the civil action on April 9, 2012, nearly 2 years prior to the April 4, 2014 Petition Date, the Individual Defendants submit that the Court should consider

---

[3] It was only through the parties' briefing that the Court received the State Court documents and even then, not all of them. As stated, the Order Vacating Judgment came after this Court heard oral argument.

15

the timeliness of the Notice of Removal under subsection (a)(3) for civil actions initiated after commencement of a bankruptcy case.   This Court disagrees with the applicability of Rule 9027(a)(3).   However, the Individual Defendants' Notice of Removal was untimely under both subsections of this Rule.

### a.   Fed. R. Bankr. P. 9027(a)(2)

The State Court Action was filed on April 9, 2012 – two years prior the bankruptcy. The applicability of Rule 9027(a)(2) is clear.   Accordingly, the Individual Defendants had the longer of 90 days from the Petition Date or 30 days from entry of an order for relief from the automatic stay, if the automatic stay applied, to file the Notice of Removal.   The Debtor filed the Petition on April 4, 2014.   Ninety days from the Petition Date was July 3, 2014.   Judge Steckroth found the automatic stay applied and granted relief from the automatic stay on January 23, 2015. Accordingly, thirty days from the granting of relief from the stay was February 23, 2015. February 23, 2015 is the longer of the two dates and it passed seven (7) months before the Individual Defendants filed the Notice of Removal.   Accordingly, under Rule 9027(a)(2), the Individual Defendants are clearly out of time.

What existed as of the Petition Date was not just the Original Complaint that, admittedly, did not seek relief against the Debtor, but also a Judgment that clearly and unambiguously – albeit later found to be erroneously entered – granted relief against the Debtor.   And the Individual Defendants fully intended to challenge this Judgment – as evidenced by the fact that Halligan's claim was scheduled as "contingent, unliquidated and disputed."   This was Stage One of the State Court Action.

What existed as of the filing of the Notice of Removal is a State Court Action that does not

name the Debtor and does not purport to seek any relief against the Debtor. As previously stated, this is Stage Two of the State Court Action.   There is absolutely nothing in Stage Two of the State Court Action that did not exist in Stage One as of the Petition Date relevant to removal.   The arguments made in the Notice of Removal are the exact same arguments that could have been made in favor of removal as of the Petition Date.   While the Original Complaint did not contain any causes of action against the Debtor, the Judgment entered by the State Court **prior** to the Petition Date granted relief against the Debtor, which is the same relief the Individual Defendants claim exist in the August Revised Amended Complaint.

Just because the Bankruptcy Court cannot vacate a judgment of the State Court does not mean the parties could not first seek removal and then ask the Bankruptcy Court for leave to file the Motion to Vacate with the State Court.   Here, the Individual Defendants asked for stay relief to file the Motion to Vacate, but failed to file a Notice of Removal.   By failing to timely request removal, it appears the Individual Defendants assumed the State Court would vacate the Judgment and there would be nothing to remove.   However, the Individual Defendants were wrong: the State Court only vacated part of the Judgment.   This is a critical fact that the Individual Defendants left out of its submissions to this Court.   Instead, the Individual Defendants represented that the Judgment is void, which is completely inaccurate (see, e.g., Individual Defendants' Letter Opposition to Motion for Remand, Docket No. 12 at page 4).

### b.  Fed. R. Bankr. P. 9027(a)(3)

### i.  As to the Individual Defendants

The Individual Defendants assert Rule 9027(a)(3)(A) is the applicable subsection for removal in this case.   The Court finds Rule 9027(a)(2) applicable, but analyzes Rule 9027(a)(3) as

requested by the Individual Defendants.   It bears repeating that under subsection (a)(3), removal

must occur "30 days after receipt, through service or otherwise, of a copy of the *initial pleading*

setting forth the claim or cause of action sought to be removed".   Fed. R. Bankr. P. 9027(a)(3)(A)

(emphasis added).   The Individual Defendants assert the initial pleading is the August Revised

Amended Complaint.   The Individual Defendants would have this Court ignore the June

Amended Complaint simply because Halligan omitted the Individual Defendants from the caption.

They refer to the June Amended Complaint as "a nullity."

There is absolutely nothing in the record before me that shows the June Amended

Complaint was a "nullity" or otherwise declared void or invalid.   It was simply amended, albeit at

the directive of Judge Velazquez, to include the Individual Defendants in the caption, the same

defendants that have been a parties to this action since 2012.[4]

There is no question, in this Court's opinion, that the Individual Defendants were at all

times parties to the State Court Action despite the fact that Halligan improperly removed their

names from the caption.   As counsel for the Individual Defendants argued "Halligan unilaterally

took out names and changed the caption, which is not proper under the rules of court" and "you

can't under the New Jersey rules simply substitute names after a pleading has been filed without

leave of court, and that wasn't done."   The Individual Defendants are correct.   Halligan's failure

to include the Individual Defendants in the caption did not remove them from the action.

Accordingly, when the Individual Defendants received the June Amended Complaint, in addition

to petitioning the State Court to have their names added back into the caption, they could have and

should have filed their Notice of Removal.

---

[4] As previously indicated, the Individual Defendants were named in the Original Complaint, removed from the
caption of the June Amended Complaint and included in the August Revised Amended Complaint.

The Individual Defendant's argument that they could not file a Notice of Removal based on the June Amended Complaint is unconvincing.   The transcript from the March 2015 State Court hearing, in which Judge Velazquez vacated the Judgment in part, reflects that they could anticipate Halligan filing an amended complaint naming the LLCs.   Halligan filed the June Amended Complaint naming H&H as the only defendant – the company in which the Individual Defendants are the only two members.   Even during the hearing before this Court, counsel for the Individual Defendants argued if a completely new action was initiated with a 2015 docket, "[w]hether [Halligan] then chose to name the individuals or not [the Individual Defendants] would have intervened and that's not speculative. . . ."   If the Individual Defendants had enough incentive to intervene in a new case, then certainly they had enough incentive to file a Notice of Removal in the existing case.

The Court also notes that the Individual Defendants had no problem filing a Motion to Vacate the Judgment solely against H&H and the Debtor, but now claim they were unable to file a Notice of Removal following the June Amended Complaint simply because Halligan only named H&H in the amended pleading.   Somehow, that does not compute.

Accordingly, even if the Court views Stage Two as triggering the time for removal, the conclusion remains the same.   The Individual Defendants filed the Notice of Removal out of time under Rule 9027(a)(3).   Although this Court believes the Original Complaint is the operative document, if the Court ignores the Original Complaint, then the June Amended Complaint is the initial pleading. In that scenario, the Notice of Removal had to be filed by July 9, 2015, to be considered timely, which was not done here.

### ii.  As to H&H

H&H failed to file a Notice of Removal.  H&H filed a Certification in Support of the Notice of Removal.  When questioned by the Court during oral argument, counsel for H&H argued that the Certification in Support was actually a joinder to the Notice of Removal, representing to the Court: "I don't want to get caught in semantics on the topic, but I know we did say that we joined completely and adopted the facts sets forth in the Notice of Removal papers . . . ."  Counsel for H&H is incorrect.  The word "join" does not appear anywhere in the Certification in Support.   The Court does not need to decide if the difference between joinder and support is just "semantics" or has legal significance.   Even if the Court considers H&H as having filed its own Notice of Removal on September 24, 2015 – the date the Individual Defendants filed their Notice of Removal – H&H was also out of time.

H&H argues that the June Amended Complaint cannot be the operative document because (1) the State Court "struck" the June Amended Complaint for failure to name the Individual Defendants in the caption, therefore it was not the initial pleading; and (2) it was not served on H&H.   These arguments are unconvincing.

Again, there is absolutely nothing in the record before me that shows the June Amended Complaint was stricken or otherwise declared void or invalid.  It was simply amended at the directive of Judge Velazquez following the Individual Defendants' request.  The June Amended Complaint named H&H as a defendant and the fact that the pleading was later amended does not and would not change its status as the initial pleading.   There is nothing in the Rule that states a defective pleading cannot be the initial pleading nor have H&H or the Individual Defendants provided support that says otherwise.

H&H further argues that service was improper because the June Amended Complaint was served on the wife of a member of H&H.   Without ruling on whether service was proper, the Rule is clear: service is not required.   The time starts to run upon receipt of the initial pleading, through service *or otherwise*.   If the June Amended Complaint was improperly served on the wife of a member of H&H, but then given to the member, then H&H received the pleading "through service or otherwise."   The member of H&H (one of the Individual Defendants) received the Complaint because shortly thereafter the Individual Defendants petitioned the State Court to require Halligan to put the Individual Defendants back in the caption.   Accordingly, H&H received the June Amended Complaint "through service or otherwise" on or about June 9, 2015, triggering the 30-day window.

Counsel for the Individual Defendants repeatedly argues that H&H was never a "live" party to the action and therefore could not remove the action.   The Individual Defendants make this assertion because H&H had not yet filed an Answer to either of the amended complaints. That argument has no merit and is completely contrary to the language of the Rule.

Accordingly, even if this Court considers H&H as having filed its own Notice of Removal on the date the Individual Defendants filed, H&H's removal is untimely.

## II.  Court Lacks Subject Matter Jurisdiction

Assuming, in the alternative, that removal was timely, this Court lacks subject matter jurisdiction.   "The first level of inquiry in evaluating a request for remand is to examine whether the action was properly removed."   *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc*. (*In re Mid-Atlantic Handling Sys., LLC*), 304 B.R. 111, 119 (Bankr. D.N.J. 2003), *citing In re Montague Pipeline Techs. Corp.*, 209 B.R. 295, 298 (Bankr. E.D.N.Y. 1997).

21

Section 1452 of Title 28 of the United States Code "authorizes a party to remove a claim or cause of action to the district court if 28 U.S.C. § 1334 provides a federal jurisdictional basis for the action."   Section 1452 provides:

> A party may remove any claim or clause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).   Section 1334 grants District Courts original and exclusive jurisdiction of all cases "under title 11"[5] and original but not exclusive jurisdiction of civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b).

### a. Arising Under or Arising In

Under Section 1334(b), "[a] proceeding is one 'arising under title 11' if the claims asserted in the matter are predicated on a right created or determined by title 11." *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 120, *citing In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991) and *Montague Pipeline Techs.*, 209 B.R. at 229.  "Bankruptcy 'arising under' jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts 'of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), *quoting* 1 *Collier on Bankruptcy* § 3.01[4][c][i] at 3-21-22 (15th ed. Rev. 2005). "A case 'arises under' title 11 'if it invokes a substantive right provided by title 11.'"   *Stoe*, 436 F.3d at 216, *quoting Torkelsen v. Maggio* (*In re Guild & Gallery Plus, Inc.*,) 72 F.3d 1171, 1178 (3d Cir. 1996).

And, "[a] proceeding 'arising in' a case under title 11 incudes various administrative matters 'that are found only in bankruptcy and which do not exist outside of a bankruptcy case.'"

---

[5] "The category of cases 'under' title 11 'refers merely to the bankruptcy petition itself.'"   *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006), *quoting In re Combustion Engineering, Inc.*, 391 F.3d 190, 225-26 n. 38 (3d Cir. 2005).

*In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 120, *citing In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 267; *see also* 28 U.S.C. § 157(b)(2).   This includes such things as requests for the turnover of property of the estate or determinations of the validity, extent and priority of liens. *See Stoe*, 436 F.3d at 216.

It is clear from a review of the August Revised Amended Complaint that the claims asserted do not arise under title 11 nor arise in a case under title 11, and the Individual Defendants do not appear to argue otherwise.   The four counts of the August Revised Amended Complaint are not even facially directed against the Debtor.   They simply mention the Debtor in passing but make no request for relief from the Debtor.   Even if the counts were directed against the Debtor, the four counts are clearly rooted in state law: breach of contract, quasi contract for payment of real estate taxes, quasi contract for payment for services, and valuation and payment for membership interest.

Accordingly, this Court will only have jurisdiction if the claims are "related to" the bankruptcy case.

### b.   Related To

"Related to" jurisdiction is generally described as "those 'non-core' proceedings otherwise related to a case under title 11 and whose outcome could conceivably have an effect on the administration of the bankruptcy estate." *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. at 120, *citing In re Guild & Gallery*, 72 F.3d at 1181; *see also* 28 U.S.C. § 157(c).   This is the test from the Third Circuit in *Pacor, Inc. v. Higgins*. 743 F.2d 984 (3d Cir. 1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124-25, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995).   The proceeding does not have to be against the debtor or debtor's property.

Rather, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. However, a matter does not fall within Section 1334 just because there are common issues of fact in both the civil proceeding and a controversy with the bankruptcy estate: "[j]udicial economy itself does not justify federal jurisdiction." *Id*. (citing to Section 1471(b), as predecessor to Section 1334).

The Third Circuit later elaborated on the *Pacor* test in *In re Marcus Hook Development Park Inc.*, stating: "[a] key word in [the] test is 'conceivable.' Certainty, or even likelihood, is not a requirement." 943 F.2d at 264, *citing In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir. 1991). Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options or freedom of action" or the "handling and administration of the bankrupt estate." *In re Marcus Hook Dev. Park*, 943 F.2d at 264, quoting In re Smith, 866 F.2d 576, 580 (3d Cir. 1989).

As broad as the conceivability test is under *Pacor* and its progeny, it is not without limits. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1181. "If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction." *Id.*, *quoting In re Gallucci*, 931 F.2d 738, 742 (11th Cir. 1991); *see also In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) ("[t]he test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceedings inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.").

What the Court has is a complaint against three non-debtors that seeks relief only against

24

non-debtor H&H under state law causes of action.    The Debtor is not a named party to the action but is referred to throughout the August Revised Amended Complaint for factual purposes.    The references to the Debtor underscore the relationship between the Debtor and H&H – the Debtor as the operating company for a bar and grill and H&H as the holding company that owns the real estate where the Debtor operates – and the allegations by Halligan that he provided services to both entities for which he was not compensated.    Services were provided under a contract with H&H and an oral agreement with the Debtor.    If the Debtor was not in bankruptcy, the Court has no doubt Halligan would have brought this action against the Debtor as well.    But, the fact remains that he did not.    Neither the June Amended Complaint nor the August Revised Amended Complaint seeks relief against the Debtor in the State Court. Halligan's bankruptcy counsel repeatedly confirmed that fact to this Court verbally on the record.    The relief Halligan seeks against the Debtor is already in the Bankruptcy Court pursuant to a proof of claim.    Part of the relief Halligan seeks against H&H is based on a contract with H&H and the rest quasi-contract. This Court has complete confidence that Judge Velazquez, and if not him then his successor, can ably determine what, if any, amounts are due from H&H to Halligan separate and apart from any amounts that may be due and owing from the Debtor.    If Judge Velazquez is unable to parse the liability of H&H to Halligan under the quasi-contract claims, Halligan will have to live with that result.

        The Trustee's adversary proceeding against Halligan does not lead to a different outcome. The Trustee's Complaint against Halligan is limited to allegations that Halligan was the recipient of fraudulent and preferential transfers from the Debtor and that Halligan breached his fiduciary duties to the Debtor.    This action can proceed independent of the State Court Action where

Halligan is seeking relief only against H&H on account of contract and quasi contract claims, as well as a valuation of his interest in H&H.

### III.    Abstention and Equitable Remand.

Even if this Court determines it has related to jurisdiction over this matter, Halligan urges this Court to abstain pursuant to 28 U.S.C. §§ 1334(c)(1) or (c)(2) or equitably remand under 28 U.S.C. § 1452(b). This Court finds that abstention and equitable remand would also be appropriate.

### a.    Mandatory Abstention

Section 1334(c)(2) provides

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Accordingly, abstention is mandatory when

> each of the following six prerequisites are satisfied: 1) a timely motion for abstention is made by a party in the proceeding; 2) the proceeding is based upon a state law claim or state law cause of action; 3) the proceeding is related to a case under title 11; 4) the proceeding does not arise under title 11; 5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and 6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

*In re Mid-Atlantic*, 304 B.R. at 121, *citing In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 757 (D.N.J. 1996).

The Individual Defendants do not address the abstention arguments apart from arguing this

Court has related to jurisdiction under title 11 and should hear this matter.   Accordingly, I need only briefly discuss each factor.   Halligan filed the Motion for Remand, which included arguments for abstention, just five (5) days after the Individual Defendants filed the Notice of Removal.   Halligan, therefore, satisfied the first factor.   The second factor requires a finding that the proceeding is based on a State law claim or cause of action.   Here, the underlying Complaint includes four causes of action, each of which are based in State law: a breach of contract claim, two quasi contract claims, and a request for valuation of Halligan's interest in H&H.   The second factor is likewise satisfied.   The third factor is addressed above where it was determined the Court did not have related to jurisdiction.   However, because the Court is considering mandatory abstention in the alternative, for purposes of this test, the Court will take the Individual Defendants' view that related to jurisdiction exists, thereby satisfying the third factor.   The fourth factor is also addressed previously where it was found this matter does not arise under title 11 as it does not invoke a substantive right created by title 11.   There does not appear to be any dispute over arising under jurisdiction.    The fifth factor is also easily addressed.   This action could not have been commenced in a federal court because no federal question exists and there is no diversity of citizenship alleged.

That leads to the sixth and final factor: can this matter be timely adjudicated in the State Court?   There is no doubt that not only can this matter be timely adjudicated in the State Court but that the State Court is in a much better position to timely adjudicate this matter.   This is where the history of this case becomes so important.   Most significant perhaps is the April 6, 2015 Order Vacating Judgment, which is cited to above, but bears repeating. Judge Velazquez ordered that "[t]he Court vacates that part of the Judgment and Modification of Judgment which awarded a

money judgment to Plaintiff and against the LLCs" and "[i]n all other respects, the findings of fact and the conclusions of law recited in the Court's November 14, 2013 Opinion, and memorialized in the Judgment and Modification of Judgment, remain undisturbed."   The fact that there is now a revised amended complaint that triggers new deadlines and additional discovery does not wipe away all that has happened in this case.   Judge Velazquez presided over this case for years and is intimately familiar with its tortured history.   This Court, on the other hand, appears to be scratching the surface and would have to become familiar with the voluminous record.   While that task might be required in other circumstances, it is not called for here.   The State Court not only can timely adjudicate this matter, but is the proper forum to do so.[6]

Since all six factors are satisfied, abstention becomes mandatory.

### b. Permissive Abstention and Equitable Remand

While this Court already found grounds to remand and abstain, the following addresses permissive abstention and equitable remand.   "'The equitable considerations relevant to the appropriateness of equitable remand and discretionary abstention under sections 1452(b) and 1334(c)(1), respectively, are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief.'" *In re Mid-Atlantic*, 304 B.R. at 126, *quoting In re Donington*, 194 B.R. at 759-60.   This is a fact driven analysis.   *In re Mid-Atlantic*, 304 B.R. at 126.

Section 1334(c)(1) provides, in part:

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or

---

[6] The parties raise the issue that Judge Velazquez intends to retire in April 2016.   Based upon the records in the State Court Action, this Court believes Judge Velazquez will make every effort to hear this case before his retirement. Frankly, however, if the Individual Defendants and H&H acted in a more timely fashion, there would be no question regarding whether Judge Velazquez would be able to adjudicate the matter prior to retirement.   Such arguments are, therefore, not persuasive to this Court.

arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).   And Section 1452(b) provides, in part:

> [t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. . . .

28 U.S.C. § 1452(b).

As set forth by the *Mid-Atlantic* Court, when deciding whether to permissively abstain, courts consider the following factors:

> 1) the effect on the efficient administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty or unsettled nature of the applicable state law; 4) comity; 5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 6) the existence of the right to a jury trial; and 7) prejudice to the involuntarily removed defendants.

*In re Mid-Atlantic*, 304 B.R. at 126, *citing In re Donington*, 194 B.R. at 760 (further citations omitted).   Many of these factors were already discussed and will only be briefly addressed in this section.

As to the first factor, there is no indication that allowing this matter to resume in State Court will have any negative effect on the efficient administration of the bankruptcy estate.   This Court already indicated that Judge Velazquez is in a better position to timely adjudicate this matter and, therefore, to the extent there is any effect on the bankruptcy estate, sending it back to State Court will only support the efficient administration.

As to the second and third factors, it is clear that all of the issues involve state law and there are no difficult or unsettled issues.

Considering the fourth factor, comity, it is also clear that this Court should defer to Judge Velazquez and the State Court to continue this action, pending in the State Court since 2012.

As already discussed, the claims asserted against H&H in the State Court Action do not overlap with the proof of claim filed by Halligan in the Debtor's bankruptcy case.   Further, the Trustee's adversary proceeding against Halligan can proceed regardless of what happens in the State Court Action.   Accordingly, the fifth factor also weighs in favor of abstention.

As to the sixth factor, right to a jury trial, Halligan argues that although he waived his right to a jury trial, it is the existence of the right to a jury trial that matters.   Halligan supports this position with relevant case law.   *See Monmouth Investor LLC v. Saker*, 2010 WL 143687 at *5 (D.N.J. Jan. 12, 2010), *citing Alderwoods Group, Inc. v. Charter Funerals, Inc.*, 344 B.R. 727, 731 (Bankr. Del. 2006).   The Individual Defendants argue there was never a right to a jury trial because the Complaint was filed in the Chancery Division where jury trials are not permitted. Even if this Court agrees with the Individual Defendants, this is only one factor to be considered and the failure to satisfy this factor is not determinative.

The seventh and final factor is whether there is prejudice to the involuntarily removed defendants.   Here, it was the Individual Defendants that filed for removal and there are no existing counterclaims against Halligan at this time that would allow me to consider the prejudice to Halligan.   This factor has no bearing on the analysis.

However, the other factors, taken together, make clear that permissive abstention and equitable remand are appropriate.

**CONCLUSION**

This Court will enter an Order remanding this case back to State Court for the reasons set

forth herein.

|                              | /s/ *Stacey L. Meisel* |
|------------------------------|------------------------|

Dated:  December 22, 2015        STACEY L. MEISEL
                                 UNITED STATES BANKRUPTCY JUDGE

31